UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

JAMES SEIBERT,

                Plaintiff,                Case No. 2:10-cv-347

v.                                             Honorable Gordon J. Quist

GREG McQUIGGIN et al.,

                Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.      Factual allegations

Plaintiff is incarcerated in the Chippewa Correctional Facility. In his *pro se* complaint, he sues the following Chippewa employees: Warden Greg McQuiggin, Classification Director J. Oja, Assistant Deputy Warden J.P. Casey and an unknown party named as "Grievance Specialist."

Plaintiff alleges that on March 5, 2010, he received a major misconduct for smuggling after someone sent him a small amount of marijuana. Plaintiff contends that an unknown person sent the package without his consent. While awaiting an administrative hearing on the misconduct ticket, Plaintiff was moved from the west side of the facility to the east side of the facility. In addition, Plaintiff was removed from his work assignment as a "lead" kitchen worker. Plaintiff alleges that he was one of the few remaining inmates that still received a monthly bonus of $30-40 per month in addition to his normal pay as he was employed before the imposition of a no-bonus policy. Following a hearing on March 17, 2010, Plaintiff was found not guilty of smuggling. After he was cleared, Plaintiff asked to be reinstated to his job assignment as lead kitchen worker on the west side of the facility. However, Plaintiff was kept on the east side of facility and was re-classified to a new kitchen job starting at the bottom of the pay scale and no longer was eligible for bonus pay.

Plaintiff alleges that after speaking to Resident Unit Manager Swift, he kited Defendant Oja and Food Service Director Shoe about the situation, but received no assistance.[1]

---

[1] RUM Swift and Food Service Director Shoe are not named as Defendants in this action.

Plaintiff subsequently filed a Step I grievance seeking reinstatement to his former job assignment. Defendant Casey, the Step I respondent, stated in part:

> The prisoner was moved to the east side of the facility causing him to be removed from his kitchen assignment. His classification/security level was not raised therefore a Security Classification Committee did not meet with him. Administration has chosen to leave him on the east side of the facility in his same level, [sic] for whatever reason it is proper and not a violation of policy. Granted in most cases if you are removed from a job assignment due to a misconduct and found not guilty you would be able to retain you[r] position; however prisoner Seibert is now in another part of the facility and that option is not available. He has since been placed in an assignment in the kitchen on the east side of the facility.

(Step I Grievance Response, docket #1, Page ID #12.) Plaintiff appealed to Step II. Defendant McQuiggin upheld the Step I response, stating in part, "Grievant was found not guilty of the misconduct; however, for security reasons he was moved to another section of the facility. Due to grievant's placement, he is not able to work in the location which he worked prior to the misconduct." (Step II Grievance Response, docket #1, Page ID #10.) The Step I and II grievance responses were upheld at Step III by the unknown Grievance Specialist.

Plaintiff claims that Defendants deliberately have kept him on the east side of the facility "in retaliation for being found not guilty of the misconduct charge, and in an effort to stop him from being reinstated back to his original job placement." (Compl., 5, Page ID#5.) Plaintiff claims that Defendants wanted to eliminate Plaintiff's bonus, which cost the facility $30-40 per month. Plaintiff claims that Defendants have violated policy and used alleged security concerns as an excuse for their retaliatory actions.

Plaintiff seeks injunctive relief, as well as monetary damages and costs.

II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff's claim that Defendants failed to reinstate him to his original job assignment and to restore his bonus pay implicates the Due Process Clause. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730, at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment as lead kitchen worker with bonus pay.

In addition, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification). Accordingly, Plaintiff's placement on the east side of the facility

versus the west side of the facility fails to implicate a liberty interested protected by the Due Process Clause.

Likewise, to the extent that Plaintiff complains that Defendants denied or failed to act in response to his grievances, he has not alleged a constitutional violation. The Constitution does not require a state to establish a prison grievance system, and thus the denial of, or failure to consider, a grievance does not state a constitutional claim under § 1983 or render the reviewing official personally involved in the deprivation alleged in the grievance. *See Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004); *Martin v. Harvey*, No. 00-1439, 2001 WL 669983, at *2 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (as against defendants whose only involvement was the denial of administrative remedies and the "failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants directly participated ... in the claimed ... acts[ ]."); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989) ("The mere fact that these defendants found plaintiff Martin's grievance concerning the seizure to be without merit is insufficient to state a claim against them."). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Plaintiff further claims that Defendants kept him to the east side of the facility where he received a lower level food service job without bonus pay, in retaliation for being found not guilty of the misconduct charge. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse

action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With regard to the first element for a retaliation claim, being found not guilty of the misconduct charge is not conduct protected by the First Amendment. However, liberally construing Plaintiff's allegations as asserting that Defendants retaliated against him for exercising his right to contest the misconduct charge more closely resembles protected speech. Even if Plaintiff can satisfy the first requirement for a retaliation claim, he cannot meet the second two requirements for a retaliation claim.

Plaintiff cannot show that an adverse action was taken against him that would deter a person of ordinary firmness from challenging a misconduct charge. Plaintiff was moved to the east side of the facility and removed from his lead food service job before the misconduct hearing and not-guilty finding. Because Plaintiff had already been moved and lost his job, he was not under threat of those consequences at the time that he was contesting the charge. He therefore cannot claim that the transfer and concomitant job loss were adverse actions taken in response to his being found not guilty of the charge. Moreover, the fact that Defendants did not move him back to the west side of the facility after he successfully defended his misconduct ticket cannot be considered adverse action. While Plaintiff hoped that he would be returned to the west side of the facility and reinstated to his lead food service job if he won at the hearing, he had nothing to lose by fighting the misconduct charge. In fact, contesting the charge could only improve his chances of being returned to the west side, as Plaintiff undisputedly would remain on the east side if he did not fight the ticket.

In other words, the possibility that Defendants would fail to send him back to the west side of the facility could not have deterred a reasonable person from fighting the charge.

Furthermore, Plaintiff fails to allege any facts supporting a causal connection between the protected conduct and any adverse action. Plaintiff's assertion that Defendants were motivated to keep him on the east side of the facility because of the not-guilty finding is wholly conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts whatsoever to support his conclusion that Defendants retaliated against him because he contested the misconduct charge or was vindicated in the misconduct proceedings. The fact that Plaintiff already had been moved to the east side of the facility and was removed from his job before the misconduct hearing and not-guilty finding undercuts Plaintiff's claim of retaliatory motive. In addition, Plaintiff's assertion that there was no security justification for his move to the east side also is without merit. Regardless of the outcome of the misconduct proceedings, someone sent Plaintiff marijuana, an illegal controlled substance.

The presence of illegal drugs clearly implicates prison security. Plaintiff, therefore, fails to state a claim against Defendants for retaliation. *See Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff also claims that Defendants violated Department policy. Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: February 4, 2011                    /s/ Gordon J. Quist
                                           GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE